.01-8000-2012

6050 GEC

2.1

IN THE CIRCUIT COURT IN THE
FOURTEENTH JUDICIAL CIRCUIT
IN AND FOR WASHINGTON COUNTY, FLORIDA

KATHLEEN RUDOLPH, BEVERLY
JENKINS, PATRICIA ANDERSON,
NANCY MITCHELL, SHARON HAGAN,
MARSHA BIGLER, BONNIE FARRIOR,
EDNA MERIDA HALL, JUDITH IVEY,
MARLA WALKER, SANDRA LEWIS,
MARY ADAIR, CAROL WOODS,
MELANIE BECKFORD, CHARLENE
FONTNEAU, TITA DE LA CRUZ, LEE
WASCHER, LINDA JONES, JOYCE
MEYER, SUSHMA PAREKH, LOURDES
SILVAGNOLI, JANET SMITH, MICHELLE
POLLOCK, VESNA POIRIER, SUSAN
BLACK, DONNA PIXLEY, PAULA
LACROIX, OLIVIA CRISAFI, and JEAN
GARRETT, individually and on behalf of
all other persons similarly situated,

     Plaintiffs,

v.

                        CASE NO. 67-02-CA-178
                        CLASS REPRESENTATION

DEPARTMENT OF CORRECTIONS,
STATE OF FLORIDA,

     Defendant.

_____/

## FIRST AMENDED COMPLAINT WITH FIRST INTERROGATORIES AND FIRST REQUEST FOR PRODUCTION OF DOCUMENTS ATTACHED AND WITH DEMAND FOR JURY TRIAL

Plaintiffs sue the Defendant and allege:

### Jurisdiction and Venue

1. This is a class action for injunctive, declaratory and equitable relief and for damages in

excess of the jurisdictional limits of the Court for violations of the Florida Human Rights Act of

- 1 -


DEFENDANT'S EXHIBIT B1
Blumberg No. 5114

1977 and the Florida Civil Rights Act of 1992, Chapter 760, Florida Statutes.

2.   Venue is proper in Washington County because many of the violations complained of herein occurred in Washington County, Florida.

## Nature of the Action

This is a class action for injunctive, declaratory and equitable relief and damages brought by current and former health care professional employees, classification officers and other non-security employees of the Department who are women and are required as a regular part of their duties to provide care and other services to male inmates in close management custody individually and on behalf of themselves and all other similarly situated female employees of the Department who on the basis of their gender are, have been, continue to be and may in the future be adversely affected by the Department's continuing policy and pattern and practice of gender-based discriminatory treatment of the Plaintiffs and the class.    This discriminatory treatment consists of policies and patterns or practices of the Department which subject the Plaintiffs and the class to unwelcome, severe and pervasive sexual harassment by inmates in close management custody of the Department. The sexual harassment is fostered by the failure of the Department to take appropriate action and to enforce and implement adequate measures to investigate and stop the harassment and by its preventing and hindering the Plaintiffs and the class from taking action to remedy the harassment.   This pervasive gender-biased disparate treatment of Plaintiffs and the class constitutes a continuing violation of the Florida Human Rights Act of 1977 and the Florida Civil Rights Act of 1977, Chapter 760, Florida Statutes.

- 2 -

## Parties

A.   Plaintiffs

3.  Plaintiff Kathy Rudolph is a woman who is employed by the Defendant as a Senior Registered Nurse ("RN") at Washington Correctional Institution ("Washington CI") in Washington County, Florida and has been employed there as a nurse since December 1995. Rudolph resides in Calhoun County, Florida.

4.  Plaintiff Beverly Jenkins is a woman who is employed by the Defendant as a Senior RN at Washington CI and has been so employed since December 1997. Jenkins resides in Bay County, Florida.

5.  Plaintiff Patricia Anderson is a woman who is employed by the Defendant as a Senior Licensed Practical Nurse ("LPN") at Washington CI and has been so employed since March 2000. Anderson resides in Bay County, Florida.

6.  Plaintiff Nancy Mitchell is a woman who is employed by the Department as a Senior RN Supervisor at Washington CI and has been so employed since November 2001. Before that, Mitchell was employed as a Senior RN at Washington CI since February 1995. Mitchell resides in Bay County, Florida.

7.  Sharon Hagan is a woman who is employed by the Department as a Senior LPN at Washington CI and has been so employed since October 1996. Hagan resides in Washington County, Florida.

8.  Plaintiff Marsha Bigler is a woman who is employed by the Department as a Senior LPN and Psychiatric Nurse at Washington CI and has been so employed since September 1995. Bigler resides in Washington County, Florida.

9.  Plaintiff Bonnie Farrior is a woman who is employed by the Department as a Senior LPN at Washington CI and has been so employed since February 1995. Farrior resides in Washington County, Florida.

10.  Plaintiff Edna Merida Hall is a woman who is employed by the Department as a Senior LPN at Washington CI and has been so employed since February 1997. Hall resides in Washington County, Florida.

11.  Judith Ivey is a woman who is employed by the Department as a Senior LPN at Washington CI and has been so employed since February 1998. Ivey resides in Washington County, Florida.

12.  Marla Walker is a woman who is employed by the Department as a Senior RN and Psychiatric Nurse at Washington CI and has been so employed since May 1995. Walker resides in Washington County, Florida.

13.  Sandra Lewis is a woman who is employed by the Department as a Senior LPN at Washington CI and has been so employed since December 1997. Lewis resides in Bay County, Florida.

14.  Mary Adair is a woman who was employed by the Department as a Senior RN/Psychiatric Nurse at Washington CI from April 1996 to November 2001. Adair resides in Holmes County, Florida.

15.  Plaintiff Carol Woods is a woman who is employed by the Department as a Senior RN at Washington CI and has been so employed since February 1996. Woods resides in Washington County, Florida.

16.  Plaintiff Melanie Beckford is a woman who was employed by the Department at

- 4 -

Martin Correctional Institution ("Martin CI") in Martin County, Florida, as a Senior RN from July 1995 to February 2002. Beckford resides in St. Lucie County, Florida.

17.     Plaintiff Charlene Fontneau is a woman who is employed by the Department and worked at Martin CI as a Senior LPN from July 1998 to February 2001. She resides in Brevard County, Florida.

18.     Plaintiff Tita de la Cruz is a woman who is employed by the Department and worked at Martin CI as a Senior LPN from June 1996 to December 2001. De la Cruz resides in Marion County, Florida.

19.     Plaintiff Lee Wascher is a woman who was employed by the Department at Martin CI as a Senior RN from March 2001 to July 2001. Wascher resides in Palm Beach County, Florida.

20.     Plaintiff Linda Jones is a woman who was employed by the Department at Martin CI and Glades CI as a Senior RN at various times from October 1999 to February 2001. Jones resides in Palm Beach County, Florida.

21.     Plaintiff Joyce Meyer is a woman who was employed by the Department at Martin CI as Senior LPN at various times from September 1989 to July 2001. Meyer resides in St. Lucie County, Florida.

22.     Sushma Parekh is a woman who was employed by the Department at Martin CI as Senior Physician and Chief Health Officer from July 1997 to October 15, 2001. Parekh resides in St. Lucie County, Florida.

23.     Plaintiff Lourdes Silvagnoli is a woman who is employed by the Department at Martin CI as a Senior LPN and has been so employed since October 2000. Silvagnoli resides in

- 5 -

St. Lucie County, Florida.

24.     Plaintiff Janet Smith is a woman who was employed by the Department at Martin CI as a Classification Officer from December 1990 to May 2001. Smith resides in Martin County, Florida.

25.     Plaintiff Michelle Pollock is a woman who was employed by the Department at Martin CI as a Senior RN from April 1990 to September 2001. Pollock resides in St. Lucie County, Florida.

26.     Plaintiff Vesna Poirier is a woman who was employed by the Department at Martin CI as a Senior RN from September 2000 to July 2001.

27.     Plaintiff Susan Black is a woman who has been employed by the Department at Martin CI as a Senior RN at various times from 1987 to present. Black resides in St. Lucie County, Florida.

28.     Plaintiff Donna Pixley is a woman who was employed by the Department at Martin CI as a Senior LPN from March, 1999 to July, 2001. Pixley resides in Martin County, Florida.

29.     Plaintiff Paula LaCroix is a woman who has been employed by the Department at Martin CI as a Senior LPN and has been so employed since August 1999. LaCroix resides in St. Lucie County, Florida

30.     Plaintiff Olivia Crisafi is a woman who has been employed by the Department at Glades Correctional Institution ("Glades CI") in Palm Beach County, Florida, as a Senior LPN from January 2001 to April 2001. Crisafi resides in Palm Beach County, Florida.

31.     Plaintiff Jean Garrett is a woman employed by the Defendant as a Registered Nurse Specialist ("RN") at Lake Correctional Institution ("Lake CI") in Lake County, Florida, and has

been employed there as a nurse since January 2002. Garrett resides in Lake County, Florida.

B.    Defendant

32.    The Defendant Department of Corrections (the "Department") is a department of the State of Florida. The Department operates approximately 68 prison facilities throughout the State of Florida. Its central office is located in Tallahassee, Florida. The central office in Tallahassee provides direction, policy, and operational and program oversight through the regional directors and their staff to all these facilities. Its operations and facilities are geographically organized into four regions.

33.    Of the 68 prison facilities operated by the Department, approximately 55 facilities house close management custody inmates. These 55 facilities are male only. Close management custody is the confinement of an inmate apart from the general population for reasons of security or the order and effective management of the facility where the inmate through his behavior has demonstrated an inability to live in the general population without abusing the rights and privileges of others. The approximately 55 facilities are distributed throughout the four organizational "Regions" of the Department, with the largest number being in Region I which contains, among other facilities, Washington CI.

34.    The Plaintiffs and the class are required as a regular, routine and ongoing term and condition of their employment to provide health care or other services to inmates in close management custody.

35    The Department's Office of Health Services in Tallahassee is responsible for the delivery of health care to inmates within the custody and control of the Department. The Office of Health Services is managed by the Director of Health Services who has overall responsibility

- 7 -

for the Office of Health Services.  The Office of Health Services consists of two management areas: clinical and administration.  The clinical area is the responsibility of the Deputy Director of Health Services who manages five functional areas and 1,950 caregivers. These 1,950 individuals include physicians, nurses, mental health professionals, pharmacists and dentists.  The Department provides comprehensive medical, dental and mental health services for inmates.

36.     The Department does not permit female Correctional Officers as a part of their regular duties to work in close management custody housing at male only prisons.

## Conditions Precedent

37.     The Plaintiffs have satisfied all conditions precedent to bringing this action.  All of the Plaintiffs, except Marla Walker, Bonnie Farrior and Linda Jones, timely filed charges of discrimination with the Florida Commission on Human Relations ("FCHR") on August 31, 2001, and more than 180 days have passed since the filing of their charges.  Linda Jones timely filed her charge of discrimination with FCHR on January 9, 2002.  Walker, Farrior, Jones and the class may rely on the timely filed charges of their co-plaintiffs, because the conduct alleged arises from the same discriminatory policies and practices of the Department in the same time frame.  Dozier v. Coe, 669 So.2d 722 (Fla. 1st DCA 1997).

## Class Representation Allegations

38.     Plaintiffs bring this action on behalf of themselves and as representatives of a class pursuant to the provisions of Rule 1.220, Florida Rules of Civil Procedure.  Plaintiffs seek class certification under subsection (b)(2) and, alternatively, (b)(3) of Rule 1.220.

39.     Commonality.  Questions of law and fact are common to all members of the class: specifically, as to both the named Plaintiffs and the class, the Plaintiffs' claims arise from the same

- 8 -

events or practice or course of conduct by the Department which gives rise to the claims of the putative class, and their claims are based upon the same legal theories as those of the putative class. The Department has engaged in system-wide policy and pattern and practice, in violation of the Florida Civil Rights Act of 1992, Chapter 760, Florida Statutes, of subjecting the Plaintiffs and the class to unwelcome, severe and pervasive sexual harassment by male inmates, specifically by engaging in the following illegitimate and unlawful practices:

a. Maintaining, fostering and condoning a sexually hostile working environment for the Plaintiffs and the class;

b. Discouraging and deterring the Plaintiffs and the class from reporting complaints of sexual harassment by inmates;

c. Failing and refusing to enforce and implement adequate policies and procedures to protect the Plaintiffs and the class from sexual harassment by inmates in close management custody; and

d. Failing and refusing to provide the Plaintiffs and the class with adequate training to protect against and stop or minimize sexual harassment by inmates.

The Department utilizes highly centralized and system-wide policies, practices and procedures as regards the pattern and practice of discrimination alleged, in particular as regards the custody and supervision of inmates and all aspects of the Plaintiffs' and the class's employment. These centralized and system-wide policies, practices and procedures are developed and promulgated from the Department's central office in Tallahassee, Florida.

40. Typicality: Plaintiffs' claims are typical of the claims of the class inasmuch as they arise from the same course of conduct as the claims of the putative class, and the class consists of

- 9 -

past, present and future health care professional employees, classification officers and other non-security employees of the Department who are women, who are required as a regular part of their duties to provide care and other services to male inmates in close management custody, and who have been adversely affected by the continuing policy and pattern or practice of gender-biased discrimination described herein.

41.     Numerosity and Class Definition: The proposed class Plaintiffs seek to represent has an estimated 500 class members throughout the state of Florida. Therefore, the class is so numerous that separate joinder of each member is impracticable. The proposed class consists of all past, present and future health care professional employees, classification officers and other non-security employees of the Department who are women and who are required as a regular part of their duties to provide care and other services to male inmates in close management custody.

42.     Adequacy of Representation: The Plaintiffs will fairly and adequately protect and represent the interests of each member of the class in that they have interests in common with the class, have no conflicts with the class, understand their responsibilities as class representatives, and have retained counsel experienced in the prosecution of complex class action litigation. The Plaintiffs are members of the class they seek to represent.

43.     The Defendants have acted on grounds generally applicable to all the members of the class, to wit: engaging in and maintaining a policy and pattern or practice of gender-biased discrimination which adversely affects the class, thereby making final injunctive relief and declaratory relief concerning the class as a whole appropriate. Accordingly, this action is maintainable under subsection (b)(2) of Rule 1.220.

44.     Alternatively, Defendants' actions, to wit:  engaging in and maintaining a policy

- 10 -

and pattern or practice of gender-biased discrimination which adversely affects the class, raise questions of law and fact common to the Plaintiffs and the class. These questions predominate over questions affecting only individual members, and class representation is superior to other available methods for the fair and efficient adjudication of the controversy. Accordingly, this action is maintainable under subsection (b)(3) of Rule 1.220.

## Claims of Named Plaintiffs

### Kathleen Rudolph

45.     Plaintiff Kathleen Rudolph is employed by the Department as a Senior RN at Washington CI. She has been employed as a Senior LPN from December 1995 to October 1997 when she became a licensed RN and assumed the position of Senior RN, which she has held since that time.

46.     Rudolph's duties as a Senior RN include dispensing medications, responding to medical and psychiatric emergencies and making sick calls to male inmates in close management custody as well as attending to inmates in the infirmary at Washington CI. She is also team leader for her shift. Her duties require regular contact with inmates in close management custody.

47.     Throughout Rudolph's employment at Washington CI, male inmates, particularly, those housed in close management, have regularly exposed their genitals and masturbated at her. While doing so the inmates frequently abused her and other female nurses with sexually degrading and demeaning comments, such as wanting to "eat her pussy," "lick her cunt," and the like and with efforts to have Rudolph and other nurses bend over or position themselves so that the inmates can look at their breasts and comment on their anatomy.

48.     Rudolph and the other nurses are required to make daily rounds of the close

management dorms and visually inspect all inmates. During these rounds, the inmates expose themselves and masturbate at her in front of the cell door windows. Others stand on commodes or their bunks and expose themselves and masturbate to be better seen by Rudolph and other nurses.

49. In one particular instance, an inmate who was to be released the next day masturbated at Rudolph while she was making her rounds. The inmate told Rudolph that it was one for the road, because he was leaving the next morning, and there was nothing she could do about it. The Correctional Officer on duty just shrugged, and nothing was done.

50. Rudolph must walk from the medical unit to the close management dorms. While she is doing so inmates often shout at her sexually degrading and demeaning comments about her appearance and about her anatomy such as "eating her pussy." This became a particular problem when the blinders were taken off the windows of the dorms.

51. On numerous occasions, Rudolph and the other nurses at Washington CI have informed the Department of the sexual harassment they have suffered and have sought relief.

52. Rudolph has routinely written disciplinary reports (DRs) on inmates who have exposed themselves to her and masturbated at her. The DRs have been filed with the prison security at Washington CI. Rudolph has further routinely made entries on "Form 815 Integration Sheets" ("815s") of the sexual harassment by inmates which reports are kept on file by the Department.

53. On October 3, 2000, Rudolph and the other nurses at Washington CI wrote Michael Moore, the Secretary of the Department, informing him of the continual problem of inmates masturbating at the nurses as they make medical rounds in the close management housing.

- 12 -

The letter informed the Secretary of the efforts made by the nurses to remedy the problem and the fact that they had written many DRs to no avail and were being discouraged against writing DRs. Despite the letter to Secretary Moore, nothing has been done to remedy the problem.

54. Not long before this letter to Secretary Moore, Rudolph and the nurses at Washington CI and elsewhere received a directive to "All Health Services" of the Department dated August 10. 2000 from David L. Thomas, the Director of Health Services for Department, in which Thomas instructed health care professionals not to write disciplinary reports or take any disciplinary action against inmates.

55. Rudolph also contacted the Inspector General's office of the Department and sent in a complaint regarding the sexual harassment. She additionally went to both the Florida State Attorney's office in Panama City and the Washington County Sheriff in an attempt to remedy the problem.

56. One Colonel Watson, a Correctional Officer at Washington CI, said that the prison is the inmates' "home" and that the nurses, therefore, had to live with it. Other security personnel have told her to "just get over it."

57. The Department has not given Rudolph any training to prepare her for or to address sexual harassment by inmates.

58. The harassment described above has occurred throughout Rudolph's employment at Washington CI and continues to occur. Rudolph has done nothing to welcome the conduct, and she finds it offensive and physically disgusting.

Beverly Jenkins

59. Plaintiff Beverly Jenkins is employed by the Department as a Senior RN at the

- 13 -

Washington CI. She has held this position since she was hired on December 1997.

60.    Jenkins' duties as a Senior RN include dispensing medications, responding to medical and psychiatric emergencies and making sick calls to male inmates as well as attending to inmates in the infirmary at Washington CI. Her duties require regular contact with inmates in close management custody.

61.    Throughout her employment at Washington CI, inmates in close management custody have regularly exposed themselves and masturbated at Jenkins. While masturbating at her, the inmates abused her with sexually degrading and demeaning comments. As part of her duties, Jenkins is required to make daily rounds of inmates in close management housing. She is required to visually look into each cell to determine whether the inmates need medical care. She and the nurses are also required to watch the inmate to be sure the inmate takes the medications dispensed. Inmates knowing that Jenkins is coming to the cells or that Jenkins is required to watch them take medicine expose themselves and masturbate at her when she looks in, often standing on commodes so that they can be better seen by her.

62.    Jenkins has routinely written DRs on inmates who have sexually harassed her. No apparent action has been taken on the DRs. For a long time, Jenkins believed that the Correctional Officers were doing the DRs. However, she later determined that they were not filing the DRs. She has been told that she is required to describe in graphic detail the harassment in the DR; otherwise, it will be rejected.

63.    In addition to writing DRs, Jenkins has routinely filled out 815s which describe the sexual harassment and are reviewed by Department officials and maintained by the Department.

64.    In response to her complaints and those of other female nurses, prison officials

- 14 -

have told her that the prison is the inmates' "home," and, therefore, they cannot stop them.

65. The Department has not given Jenkins any training to prepare her for or to address sexual harassment by inmates.

66. The harassment described above has occurred throughout Jenkins' employment at Washington CI and continues to occur. Jenkins has done nothing to welcome the conduct, and she finds it offensive and physically disgusting.

Patricia Anderson

67. Plaintiff Patricia Anderson is employed by the Department as a Senior LPN at Washington CI. She has been a Senior LPN at Washington CI since March 2000. Before that she worked for the Department at Hernando CI, Sumter CI and Zephyrhills CI.

68. Anderson's duties as a Senior LPN at Washington CI include dispensing medication to inmates, responding to medical emergencies of inmates, and making daily rounds of inmates to determine and attend to their healthcare needs. Her duties require regular contact with inmates in close management custody.

69. On her first day on the job at Washington CI, Anderson was subjected to inmates in close management exposing themselves and masturbating at her. Since that day, inmates in close confinement have routinely exposed themselves and masturbated at her and in some cases inmates have ejaculated in her presence. The inmates routinely make sexually degrading and demeaning comments to her and to other female nurses. On her first day, she was called a "a fresh bitch" and "a new cunt."

70. On one occasion an inmate to whom she was dispensing medications began masturbating when she reached his cell door. She was with a Correctional Officer who told her to

- 15 -

walk on and not give him his medication. The inmate called her a "pussy-ass white bitch" and spit at her. She asked the officer to get the officer in charge, Captain Wall. Captain Wall arrived, and she explained the incident. Wall then questioned the inmate. Anderson overheard him explain to the inmate how to file a grievance against Anderson Anderson did an incident report which she sent to the warden. Nothing came of her report.

71.     In two other instances, the inmates were "orderlies" in close management and both masturbated while staring intently at her. She reported it to the Correctional Officer on duty and in one case she was told that the inmate was a "good inmate," and nothing was done. The other inmate was initially locked up but then a short time later was allowed to be a "run-a-round" again. Many Correctional Officers have told her that they wish something would be done but that their hands were tied. She has been told by other Correctional Officers that the prison is the inmates' "home," and, therefore, the inmate behavior is tolerated.

72.     During her employment at Washington CI, Anderson has routinely written DRs when inmates have sexually harassed her. She gave the DRs to security officials. DRs she has written have been rejected, because not all officers working the close management dorms were listed even though the other officers were not in the dorm in which the harassment occurred, or because her description of the inmate's conduct - masturbation - was not graphic and detailed enough.

73.     In August 2000, Anderson was told by Dr. David Thomas, the Department's Director of Health Services, that she should not write DRs, and she stopped for a while.

74.     Anderson has also made numerous records of the sexual harassment described above in 815s.

- 16 -

75. Anderson experienced similar sexual harassment at Sumter CI and Zephyrhills CI, both of which is are close management facilities. She did not experience such harassment at Hernando CI, because it was a minimum security and did not house close management inmates.

76. The Department has not been given Anderson any training to prepare for or to address sexual harassment by inmates.

77. The harassment described above has occurred throughout Anderson's employment at Washington CI and continues to occur. Anderson has done nothing to welcome the conduct, and she finds it offensive and physically disgusting.

Nancy Mitchell

78. Plaintiff Nancy Mitchell is employed by the Department as a Senior RN Supervisor at Washington CI. She has been so employed since November 2001. Before that she was employed as a Senior RN at Washington CI continuously from the date of her hire in February 1995.

79. Mitchell's duties as a Senior RN include dispensing medications, responding to medical and psychiatric emergencies and making sick calls or rounds to male inmates in close management custody as well as attending to inmates in the infirmary at Washington CI. As Senior RN Supervisor, her duties also include the supervision of nurses at Washington CI. Her duties require regular contact with inmates in close management custody.

80. Throughout her employment at Washington CI, inmates in close management custody have regularly exposed themselves and masturbated at Mitchell. This has occurred regularly when Mitchell has made daily sick and medication rounds in the close management housing, which require her and other nurses to visually inspect the inmates as well as dispense

- 17 -

medication to them at their cells. The inmates expose themselves and masturbate at her while receiving medications. Inmates not receiving medications stand on toilets and on their bunks, so that Mitchell cannot avoid seeing them while she makes her rounds, and masturbate at her. The inmates also regularly fake emergency calls to make Mitchell come to close management housing so they can sexually harass her. While harassing Mitchell the inmates make sexually degrading and demeaning comments to her.

81.    Mitchell has regularly experienced the same sexual harassment by inmates in the isolation rooms and less often in the infirmary in the medical unit. Mitchell's office looks onto the isolation rooms from which inmates stare at her and masturbate.

82.    Mitchell has written numerous DRs on these inmates. The DRs appear to get lost and nothing has resulted from them. She and the other nurses have been told not to write them.

83.    Mitchell has also made numerous records of the sexual harassment on 815s which are submitted to prison officials at Washington CI.

84.    She has been told by correctional officials at Washington CI that she has to remember where she is working and that she must just live with it.

85.    At one point, Mitchell and other nurses had curtains installed in the windows of the close management cells in the multi-service building where the medical unit is located to remedy the harassment of inmates masturbating at the female nurses. The nurses were told to take them down.

86.    The Department has not given Mitchell any training to prepare her for or to address sexual harassment by inmates.

87.    The harassment described above has occurred throughout Mitchell's employment

- 18 -

at Washington CI and continues to occur. Mitchell has done nothing to welcome the conduct, and she finds it offensive and physically disgusting

Sharon Hagan

88.    Plaintiff Sharon Hagan is employed by the Department as a Senior LPN at Washington CI. She has been employed at the Department at Washington CI since October 1996.

89.    Hagan's duties as a Senior LPN are to provide health care to inmates at Washington CI, including dispensing medication, responding to medical emergencies and making daily medical rounds in the close management dorms as well as attending to the medical needs of inmates housed in the infirmary.

90.    As has happened throughout her employment at Washington CI, inmates in the close management dorms routinely expose themselves and masturbate at her. This typically happens while she is making daily medical rounds during which she is required to visually look in on each inmate. It also often occurs when she is dispensing medication to close management inmates. While the inmates are masturbating at her, she is regularly abused with sexually degrading and demeaning comments, such as "white cunt," "fucking bitch" or "white whore" and the like.

91.    The inmates in close management know whenever Hagan or other female nurses are coming to the dorm. The inmates are often not dressed when she arrives and are not required to do so. When she has asked why this is so, Hagan has been told that the inmate's cell is his "home," and the inmate's rights have to be protected.

92.    Hagan has written numerous DRs on inmates who have exposed themselves and masturbated at her. She has rarely, if ever, seen any follow up on any of the DRs she has written;

- 19 -

nor has she been asked to give additional information or answer any questions regarding the DRs.
Hagan has not been given any training on how to complete DRs other than occasional advice from
Correctional Officers. She eventually stopped writing DRs, because many of those she wrote
were rejected, and no discipline was ever meted out to the inmates. She was also told that the
Department did not want nurses to submit DRs, because the processing cost of each was $600-
700.

93.     The Department has not given Hagan any training to prepare her for or to address
sexual harassment by inmates.

94.     The harassment described above has occurred throughout Hagan's employment at
Washington CI and continues to occur. Hagan has done nothing to welcome the conduct, and she
finds it offensive and physically disgusting.

Marsha Bigler

95.     Plaintiff Marsha Bigler is employed by the Department as a Senior LPN at
Washington CI. She has been so employed since September 1995. She assumed duties as a
psychiatric nurse in March 2002.

96.     Bigler's duties as a Senior LPN are to provide health care to inmates at
Washington CI, including dispensing medication, responding to medical and psychiatric
emergencies and making daily medical rounds in the close management dorms, as well as
dispensing medication to open population inmates at the medical building and attending to the
medical needs of inmates housed in the infirmary. Her duties require regular contact with inmates
in close management custody.

97.     Throughout her employment at Washington CI, inmates in close confinement have

- 20 -

repeatedly exposed themselves and masturbated at her. While they are doing this, the inmates routinely call her sexually degrading and harassing names, such as "white cunt" and "white bitch," make sexually degrading comments about her body and ask sexually degrading questions, such as how she feels about "black dicks" and whether she has "ever had one." Throughout her employment she has been frequently called to respond to medical emergencies which are faked, and when she arrives at the inmate's cell, the inmate masturbates at her.

98.    Bigler and other nurses at Washington CI routinely have written DRs on inmates for this sexual harassment. Bigler has not received any follow-up information on DRs she has written; nor has she ever been asked to give testimony at any hearings on DRs she has written. She has largely stopped writing DRs, because she believes that nothing will be done.

99.    As recently as February 2002, an inmate transferred to Washington CI masturbated while another female nurse was processing his medical intake. Bigler checked his file, which showed that he had received numerous DRs for masturbating at another institution.

100.    Also, in or around the same timeframe, Bigler wrote a disciplinary report on an inmate for masturbating in her presence. The DR was rejected as not properly worded. She was never instructed regarding how to correctly word a DR. On occasions, she asked Correctional Officers for assistance, since the DRs she wrote were often rejected.

101.    Bigler and other nurses at Washington CI wrote Michael Moore, the Secretary of the Department, on October 3, 2000, informing him of the continual problem of inmates masturbating in front of the nurses as they made medical rounds in the close confinement housing. The letter informed the Secretary of the efforts made by the nurses to remedy the problem and the fact that they had written many DRs to no avail and were being discouraged against writing DRs.

- 21 -

This letter was in response to a directive to "All Health Services" of the Department sent on August 10, 2000 by David L. Thomas, the Director of Health Services for Department, in which Thomas instructed health care professionals not to write disciplinary reports or take any disciplinary action against inmates. Despite the letter to Secretary Moore, nothing has been done to remedy the problem.

102.    The Department has not given Bigler any training to prepare her for or to address sexual harassment by inmates.

103.    The harassment described above has occurred throughout Bigler's employment at Washington CI and continues to occur. Bigler has done nothing to welcome the conduct, and she finds it offensive and physically disgusting.

Bonnie Farrior

104.    Plaintiff Bonnie Farrior is employed by the Department as a Senior LPN at Washington CI. She has been so employed since February 1995.

105.    Farrior's primary duties as a Senior LPN included dispensing medication and responding to medical and psychiatric emergencies and sick calls of inmates at Washington CI. Her duties require regular contact with inmates in close management custody.

106.    In performing her duties, Farrior and other nurses are required to visually inspect inmates in close management custody daily. Throughout her employment inmates in close management have regularly exposed themselves and masturbated at her. When masturbating, inmates shout at Farrior sexually degrading and demeaning comments, such as "suck my dick, bitch," threaten to "nail her from behind" and attempt to force her and other nurses to bend over. One inmate responded to her having written a DR for his masturbating by alleging that she had sat

- 22 -

at a desk with her legs spread apart and genitals exposed. On another occasion, an inmate orderly masturbated at her in the multipurpose room, staring at her while he did so as other inmates stood nearby.

107. Inmates in the isolation cells in the medical unit also routinely masturbate in the presence of Farrior and other nurses as they look at them through the cell window.

108. In the earlier years of her employment before locks were put on the food slots of cell doors, inmates in close management attempted to ejaculate on her and other nurses as they made their rounds.

109. One of Farrior's supervisors would not go on rounds because of how bad the harassment was. In response to her complaints about the harassment, an Inspector Bush asked her rhetorically, "don't you realize where you work?" He said there was nothing he could do and if she could not handle it, she should find another job.

110. Farrior and other nurses were told that if they did write DRs they had to be extremely explicit in their description of the harassment. She was told that stating that the inmate had "masturbated" was not sufficient. Rather, she had to describe whether the inmate's penis was erect, which hand he was using, that he was sliding his hand up and down his penis, and so on. DRs which did not conform to these requirements were rejected.

111. The Department has not given Farrior any training to prepare her for or to address sexual harassment by inmates.

112. The harassment described above has occurred throughout Farrior's employment at Washington CI and continues to occur. Farrior has done nothing to welcome the conduct, and she finds it offensive and physically disgusting.

Edna Merida Hall

113.     Plaintiff Edna Merida Hall is employed by the Department as a Senior LPN at Washington CI. She has been so employed since February 1997.

114.     Hall's duties as a Senior LPN include dispensing medications, responding to medical emergencies and making sick calls to male inmates as well as attending to inmates in the infirmary at Washington CI. Her duties require regular contact with inmates in close management custody.

115.     Hall is required to make daily rounds and visually inspect inmates in the close management dorms. During these rounds inmates regularly exposes themselves and masturbate at her. When she administers medicines and performs other medical operations at the cell doors of inmates, the inmates masturbate while speaking to her or insert their penises through the food slot on the cell doors and masturbate. Nurses are not permitted to deny care to inmates who are sexually harassing them.

116.     Inmates routinely call Hall such names as "white bitch," demand that she suck their "dicks," yell "what a fine ass she's got," and taunt her with "Don't you need me? And don't you need this?" referring to their penises. Hall and other nurses take care to make sure they are completely covered with clothing to minimize the sexual harassment.

117.     One particular inmate with hypertension used this condition to routinely declare medical emergencies, sometimes as much as 3 to 4 times daily. When Hall arrived at his cell, he would masturbate in the window at her. Correctional Officers witnessed this. No action was taken despite the fact that Hall filed DRs and made chart notations of the behavior.

118.     Hall has often written DRs on inmates who have sexually harassed her. These

have had no effect and have not been taken seriously by the Department. Hall has had DRs rejected allegedly because they were not worded correctly. She has also been told that writing DRs is a function of security and not medical staff. For a time, she and other nurses at Washington CI stopped writing DRs, because they were having no effect.

119. Hall has been told by officials of the Department that she should have expected to be sexually harassed because she works at the prison.

120. The Department has not given Hall any training to prepare her for or to address sexual harassment by inmates.

121. The harassment described above has occurred throughout Hall's employment at Washington CI and continues to occur. Hall has done nothing to welcome the conduct, and she finds it offensive and physically disgusting.

## Judith Ivey

122. Plaintiff Judith Ivey is employed by the Department as a Senior LPN at Washington CI. She has been so employed since February 1998.

123. Ivey's duties as a Senior LPN include dispensing medications, responding to medical emergencies and making sick calls to male inmates in close management custody as well as dispensing medications and attending to open population inmates in the medical building and in the infirmary at Washington CI. Her duties require regular contact with inmates in close management custody.

124. Ivey daily dispenses medication to inmates in close confinement. The inmates regularly expose themselves and masturbate at her while she is dispensing medication to them. At this time, inmates in other cells stand on toilets and get in their bunks so that they can be seen by

- 25 -

her and masturbate at her. While doing so, the inmates shout to her sexually degrading and demeaning names, whistle, make comments about her anatomy, such as her behind, and tell her she is sexy.

125.    Inmates regularly fake medical emergency calls, and when Ivey arrives they masturbate at her. Most medical emergencies are called simply to get a female nurse to come down to the close management dorms where the nurse can be sexually harassed.

126.    Inmates in the isolation cells in the medical building also expose themselves and masturbate at Ivey.

127.    Ivey has written DRs on the inmates. The DRs she wrote were ignored. She also makes notations of the inmate's sexual harassment on encounter forms. She finds it embarrassing to ask Correctional Officers to write DRs on inmates for masturbating at her. She was also told that she was not supposed to write DRs, but rather the Correctional Officers were supposed to.

128.    Recently, while Ivey was on her break an inmate in the kitchen area called to her to get her attention, and when she looked at him, he masturbated at her. She called the security officer and believes that the inmate was not disciplined.

129.    Ivey has been told that she must put up with the sexual harassment because she works in a prison.

130.    The Department has not given Ivey any training to prepare her for or to address sexual harassment by inmates.

131.    The harassment described above has occurred throughout Ivey's employment at Washington CI and continues to occur. Ivey has done nothing to welcome the conduct, and she finds it offensive and physically disgusting.

Marla Walker

132.    Plaintiff Marla Walker is employed by the Department as a Senior RN and Psychiatric Nurse at Washington CI. She has been so employed since May 1995.

133.    Walker's duties as a Senior RN include dispensing medications, responding to medical emergencies and making sick calls to male inmates in close management custody as well as dispensing medications and attending to open population inmates in the medical building and in the infirmary at Washington CI. Her duties as a Psychiatric Nurse include scheduling inmate psychiatric appointments, tracking inmate prescriptions, dispensing and monitoring of medications, answering emergency calls, assisting psychologists and psychiatrists employed by the Department and performing related duties. Walker's duties require regular contact with inmates in close management custody.

134.    Throughout Walker's employment at Washington CI, male inmates in close management custody have regularly exposed themselves and masturbated at her. This regularly occurs in the close management custody dorms were she is required to attend to inmates and in the medical unit, particularly the isolation management room cells.

135.    While the inmates expose themselves and masturbate at her, they regularly abuse her with sexually degrading and demeaning comments, such as saying "I'd like to do this to you," "I'd like to suck that pussy," "take that [clothing] off" and the like. These kinds of comments are regularly made to Walker and other female nurses as they walk to and from the medical unit and the close management housing.

136.    The inmates regularly make emergency calls, to which she is required to respond, that are faked so that the inmates can expose themselves and masturbate at Walker and other

- 27 -

female nurses.

137.    Walker has written numerous DRs on inmates for exposing themselves and masturbating at her. Her DRs have not been processed or pursued, or they have not been taken seriously.

138.    Walker and other female nurses at Washington CI complained through the chain of command at Washington CI about the sexual harassment they were experiencing. Because their complaints were not addressed, they wrote to the Department's Secretary Moore. Walker and other nurses were also told by Dr. Thomas, the Department's chief medical officer, that they should not write DRs.

139.    The Department has not given Walker any training to prepare her for or to address sexual harassment by inmates.

140.    The harassment described above has occurred throughout Walker's employment at Washington CI and continues to occur. Walker has done nothing to welcome the conduct, and she finds it offensive and physically disgusting.

Sandra Lewis

141.    Plaintiff Sandra Lewis is employed by the Department as a Senior LPN at Washington CI. She has been so employed since December 1997.

142.    Lewis's duties as a Senior LPN include dispensing medications, responding to medical emergencies and making sick calls to male inmates in close management custody as well as dispensing medications and attending to open population inmates in the medical building and in the infirmary at Washington CI. Her duties require regular contact with inmates in close management custody.

- 28 -

143. Throughout Lewis's employment at Washington CI, male inmates in close management have regularly exposed themselves and masturbated at Lewis. Inmates regularly fake emergency medical calls, to which Lewis was required to respond, and when she arrives, the inmates expose themselves and masturbate at her. Inmates also use legitimate emergency calls to expose themselves and masturbate at Lewis. When dispensing medications through the food slots in the cell doors in close management housing, inmates regularly have inserted their penises through the slot and masturbated and, in some instances, attempted to ejaculate on Lewis.

144. While exposing themselves and masturbating, as well as at other times, the inmates shout sexually degrading and demeaning comments at Lewis and other female nurses, such as "Wouldn't you like some of this? (pointing at their penises)," "Big mama, I like big women, lots of meat," "I've got something for you. You've never had it so good," "I could just get it on with you," "I'd like to fuck you," "you've never had it so good until you've had me," and the like.

145. Close management inmates brought to the medical unit have routinely exposed themselves and masturbated at Lewis and made sexually degrading and demeaning comments to Lewis.

146. Lewis has worked various shifts at Washington CI and has experienced the sexual harassment described above during all shifts.

147. Lewis has written numerous DRs on these inmates. She believes that most of these have been rejected, lost or not processed, because nothing has resulted from them. At one point, Lewis and the other nurses were told that only Correctional Officers could write the DRs and that the officers could only do so if they themselves witnessed the sexual harassment. She has been told that every DR costs the Department money.

148.    Lewis and the other nurses also have regularly made records of this sexual harassment on 815s.

149.    The Department did not give Lewis any training to prepare her for or to address sexual harassment by inmates.

150.    The sexual harassment described above occurred throughout Lewis's employment at Washington CI. Lewis did nothing to welcome the conduct, and she found it offensive and physically disgusting.

Mary Adair

151.    Plaintiff Mary Adair was employed by the Department as an RN/Psych Specialist at Washington CI. She was so employed from April 1996 until November 2001.

152.    Adair's duties as an RN/Psych Specialist were to provide psychiatric care to inmates, including responding to psychiatric emergencies, monitoring and occasionally dispensing medications, making psychiatric assessments and performing related duties. Her duties required contact with inmates in close management custody

153.    On numerous occasions during her tenure at Washington CI, inmates in close management custody exposed themselves and masturbated at Adair. This typically happened when Adair was attending to inmates housed in the isolation cells in the infirmary. It also occurred when Adair dispensed medications to inmates in close management custody.

154.    Inmates often faked psychiatric emergencies to be placed in the isolation cells in the infirmary for the purpose of exposing themselves and masturbating at Adair and other female nurses.

155.    Adair and the other female nurses put up screens on the windows of the isolation